**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| AFSHIN ZARINEBAF, ZACHARY CHERNIK, and JOAN MEYER, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) ) |
| Plaintiffs, | ) ) ) |
| v. | ) ) ) |
| CHAMPION PETFOODS USA INC. and CHAMPION PETFOODS LP, | ) ) ) |
| Defendants. | ) ) ) |

Case No. 1:18-cv-06951

Honorable Virginia M. Kendall

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**

## **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1

II.  ARGUMENT .................................................................................................................... 3

   A.   Plaintiffs Demonstrated Predominance........................................................... 3

      1.   The Packaging at Issue Does Not Vary In Any Material Way ............................ 3

      2.   All Packaging is Misleading As to the Content of Non-Fresh and
            Non-Regional Ingredients Used by CPF................................................................ 8

      3.   Lot-by-Lot Variations Demonstrate the Packaging Claims Are Deceptive............ 9

   B.   Class Members' Damages Can be Calculated Classwide ........................................... 12

   C.   The Requirements of Rule 23(b)(2) are Satisfied. ....................................................... 14

   D.   Rule 23(c)(4) Certification is Appropriate.................................................................... 14

III. CONCLUSION ................................................................................................................ 15

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Arreola v. Godinez*,
546 F.3d 788 (7th Cir. 2008) ...................................................15

*Bell v. Publix Super Markets, Inc.*,
982 F.3d 468 (7th Cir. 2020) ..................................... *passim*

*Broomfield v. Craft Brew All., Inc.*,
2018 WL 4952519 (N.D. Cal. Sept. 25, 2018) .......................13

*Butler v. Sears, Roebuck & Co.*,
727 F.3d 796 (7th Cir. 2013) ...............................................3, 15

*Coates v. Johnson & Johnson*,
756 F. 2d 524 (7th Cir. 1985) ...............................................11

*Dawson v. Great Lakes Educ. Loan Servs, Inc.*,
327 F.R.D. 637 (W.D. Wisc. 2018) .......................................15

*F.T.C. v. Bronson Partners, LLC*,
564 F. Supp. 2d 119 (D. Conn. 2008)......................................9

*Flynn v. FCA US LLC*,
327 F.R.D. 206 (S.D. Ill. 2018) .............................................13

*In re Allstate Ins. Co.*,
400 F.3d 505 (7th Cir. 2005) .................................................15

*In re ConAgra Foods, Inc.*,
90 F. Supp. 3d 919 (C.D. Cal. 2015) ....................................12

*In re Fluidmaster, Inc. Water Connector Components Prods. Liab. Litig.*,
2017 WL 1196990 (N.D. Ill. Mar. 31, 2017)................12, 13, 14

*In re Gen. Motors Corp. Engine Interchange Litig.*,
594 F.2d 1106 (7th Cir. 1979) .................................................3

*In re Gen. Motors LLC Ignition Switch Litig.*,
407 F. Supp. 3d 212 (S.D.N.Y. 2019)...................................13

*In re IKO Roofing Shingle Prods. Liab. Litig.*,
757 F.3d 599 (7th Cir. 2014) ................................................12

*In re: Kind LLC "Health and All Natural" Litig.*,
2021 WL 1132147 (S.D.N.Y. Mar. 24, 2021) ...............3, 8, 14

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.*,
  2007 WL 4287511 (N.D. Ill. Dec. 4, 2007) ...................................................................4

*Lacy v. Dart*,
  2015 WL 1995576 (N.D. Ill. Apr. 30, 2015) ...............................................................14

*Langendorf v. Skinnygirl Cocktails, LLC*,
  306 F.R.D. 574 (N.D. Ill. 2014) ....................................................................................5

*Leppert v. Champion Petfoods USA Inc.*,
  2019 WL 216616 (N.D. Ill. Jan. 16, 2019) .................................................................11

*Lipton v. Chattem, Inc.*,
  289 F.R.D. 456 (N.D. Ill. 2013) ....................................................................................4

*Mannacio v. LG Elecs. U.S.A., Inc.*,
  2020 WL 4676285 (D. Minn. Aug 12, 2020) ..............................................................13

*McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  672 F. 3d 482 (7th Cir. 2012) ......................................................................................15

*Mednick v. Precor, Inc.*,
  2017 WL 2619139 (N.D. Ill. June 16, 2017) ...............................................................4

*Mejdrech v. Met-Coil Sys. Corp.*,
  319 F.3d 910 (7th Cir. 2003) .......................................................................................14

*Oshana v. Coca-Cola Bottling Co.*,
  225 F.R.D. 575 (N.D. Ill. 2005) .................................................................................5, 6

*Pella Corp. v. Saltzman*,
  606 F.3d 391 (7th Cir. 2010) .......................................................................................15

*Saltzman v. Pella Corp.*,
  257 F.R.D. 471 (N.D. Ill. 2009) ..................................................................................14

*Stewart v. Riviana Foods Inc.*,
  2017 WL 4045952 (S.D.N.Y. Sept. 11, 2017) ..............................................................6

*Suchanek v. Sturm Foods, Inc.*,
  2017 WL 3704206 (S.D. Ill. Aug. 28, 2017) ..................................................4, 5, 9, 14

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014) ......................................2, 5

*Tropicana Orange Juice Mktg. & Sales Practices Litig.*, 2019 WL 2521958
  (D.N.J. June 18, 2019) ..................................................................................................7

*Zeiger v. WellPet LLC*,
  2021 WL 756109 (N.D. Cal. Feb. 26, 2021) ...............................................4, 11, 12, 14

**RULES**

Fed. R. Civ. P. 23 ............................................................................................................... *passim*

## I.     INTRODUCTION

In an effort to avoid class certification, CPF turns the reasonable consumer standard on its head by asking this Court to consider evidence and arguments contrary to a consumer's actual shopping experience.[1] CPF's argument ignores the real world shopping experience that happens in "seconds" and does not involve any due diligence or parsing of a product's packaging. *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 475 (7th Cir. 2020). CPF's opposition makes no mention of *Bell* that controls this analysis.

According to CPF, a consumer must first analyze the ingredient panel and decide whether each ingredient is even capable of being fresh or regional. This squarely conflicts with *Bell*. *Id.* at 476 (stating that many "reasonable consumers do not instinctively parse every front label or read every back label before placing groceries in their carts."). Then CPF goes further and argues that she must analyze whether it is realistic for each ingredient to be fresh or regional given *the season* of the purchase and *the location* of CPF's kitchen. *Bell* says nothing of the sort. *Id.* ("Consumer-protection laws do not impose on average consumers an obligation to question the labels they see and to parse them as lawyers might for ambiguities, especially in the seconds usually spent picking a low-cost product."). Next, CPF suggests that the consumer must scour the entire package and piece together whether any limited disclosures or general context may inform any of the packaging's multiple Biologically Appropriate, fresh or regional promises. Again, *Bell* stands for the opposite proposition. *See id.* at 481 ("What matters here is how consumers actually behave.…We doubt it would surprise retailers and marketers if evidence showed that many grocery shoppers make quick decisions that do not involve careful consideration of all information available to them."). Finally, even though the Classes' packaging uses the

---

[1] All terms defined in opening brief.

Biologically Appropriate, fresh or regional promises multiple times, the consumer must consider undisclosed manufacturing practices (the use of regrinds, frozen and/or expired ingredients, and subpar quality control procedures to prevent inclusion of contaminants) before deciding whether these promises are misleading. That is not expected of the reasonable consumer. *Id.* at 493 ("[W]hile lawyers and judges can find ambiguity in just about anything, that's not what we expect of the reasonable consumer."). And for those who have purchased CPF's *other* products not at issue in this case (no matter how long ago), CPF argues that they should catalog the context on that packaging and apply that context to the current bag of dog food, *even though it is not on the package being purchased*. All of this is contradicted by Plaintiffs' consumer survey, their expert opinion that consumers are misled, and common sense. None of these arguments can be reconciled with *Bell's* holding.

CPF's other arguments are likewise contrary to the actual consumer experience, consumer protection laws, and Rule 23. CPF argues, with no legal support, that the Packaging Claims and Omissions are not false or misleading because "100%" does not appear on the packaging. Consumer protection laws do not extend only to "100%" packaging claims since this would eviscerate the reasonable consumer standard. *Id.* at 477 (stating, "Deceptive advertisements often intentionally use ambiguity to mislead consumers while maintaining some level of deniability about the intended meaning.") (citation omitted); *see also Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 761-62 (7th Cir. 2014) ("consumer protection laws…may be satisfied by proof that a statement is likely to mislead a reasonable consumer, even if the statement is literally true."). Plaintiffs' consumer survey and expert opinion show that the Packaging Claims and Omissions were misleading to a reasonable consumer. CPF's alternative interpretation of its packaging promises fails. *Bell*, 982 F.3d at 476.

Finally, CPF's argument that a bag-by-bag analysis is necessary because it only *sometimes* includes what it promises on *all* its packaging fails for several reasons. First, every bag of Dog Food contains heavy metals and certain non-fresh and non-regional ingredients. Second, CPF's undisclosed standard manufacturing practices permit regular inclusion of non-fresh, non-regional, and unnatural ingredients, yet it now argues its "Pet Lovers" cannot be misled unless they review the manufacturing logs of every Dog Food bag and performs independent testing on the kibble. Third, under CPF's flawed legal analysis, it would have free reign to say anything on its packaging while consumers would be left guessing if any of the promises matched the actual quality of the Dog Food. That result would upend consumer protection laws and product labeling class actions.

## II.    ARGUMENT

### A.    Plaintiffs Demonstrated Predominance

#### 1.    The Packaging at Issue Does Not Vary In Any Material Way

CPF cries foul at Plaintiffs' use of individual Classes (calling them "mini-classes") for each diet and then compares the "differences" between all packaging. Dkt. 114 at 12-17. But the use of different classes or "mini-classes" is well accepted. Fed. R. Civ. P. 23(c)(5) ("When appropriate, a class may be divided into subclasses that are each treated as a class under this rule."). *See also In re Gen. Motors Corp. Engine Interchange Litig.,* 594 F.2d 1106, 1129 n. 38 (7th Cir. 1979) ("Division of a class or potential class into subclasses to account for differences in proof that may be required at trial is clearly permissible."); *Butler v. Sears, Roebuck & Co.,* 727 F.3d 796, 801-02 (7th Cir. 2013) ("Complications [that] arise from the design changes . . . can be handled by the creation of subclasses."). CPF's complaints regarding mini-classes are meritless and comparisons of the Classes' diets should be ignored as each Class is properly limited to one diet. Dkt. 114 at 12-17.

3

Second, the alleged packaging variations do not present a barrier to class certification here for the Omissions. *Zeiger v. WellPet LLC*, 2021 WL 756109, at *27 (N.D. Cal. Feb. 26, 2021). It is undisputed the packaging fails to disclose heavy metals, BPA, and pentobarbital or the regular use of regrinds, frozen, expired, or non-regional ingredients. Recognizing this issue, CPF cherry picks the evidence in the record and contends that Plaintiffs' knowledge of heavy metals or the use of *limited disclosed* regional ingredients defeats predominance. But Plaintiffs testified they did not know the Dog Food contained heavy metals and did not interpret alleged "disclosures" of specific non-regional ingredient to apply to any other ingredient. *See e.g.* Dkt. 95-37; Ex. 36 at 94:13-16, 97:7-9; Dkt. 95-38; Ex. 37 at 142:19-143:14 (Plaintiffs did not know about the presence of heavy metals when purchasing the Dog Food); Dkt. 95-36; Ex. 35 at 248:2-6, Ex. 72 at 225:4-9 (Plaintiff was told there were no heavy metals by CPF); Dkt. 95-35; Ex. 35 at 248:7-17, Dkt. 95-38; Ex. 37 at 177:4-14 (Plaintiffs did not believe other ingredients would not be regional based on the disclosure of certain non-regional ingredients).

CPF's cited cases are inapposite. *See Lipton v. Chattem, Inc.,* 289 F.R.D. 456, 459-460 (N.D. Ill. 2013) (Plaintiff testified she would have purchased the product even if the challenged *undisclosed* ingredient was disclosed); *In re Sears, Roebuck & Co. Tools Mktg. & Sales Pracs. Litig.*, 2007 WL 4287511, at *5 (N.D. Ill. Dec. 4, 2007) (knowledge of deceptive practices bars certification). More importantly, these cases:

> … endorse the proposition—since then rejected by the Seventh Circuit—that "no class can be certified until proof exists that every member has been harmed." Such an approach would obliterate the class action as a mechanism for vindicating claims of consumer fraud, and the Court cannot follow it.

*Mednick v. Precor, Inc*., 2017 WL 2619139, at *8 (N.D. Ill. June 16, 2017) (quoting *Suchanek*, 764 F.3d at 757). Ultimately, whether CPF's packaging is false or misleading is "an objective

question, not one that depends on each purchaser's subjective understanding of the package.*"

*Suchanek*, 764 F.3d at 758. As recognized by this Court:

> [I]ndividual issues will almost always be present in consumer fraud actions, and the Seventh Circuit recently stated that it is an error of law to apply a rigid rule that "individual issues necessarily predominate in cases requiring individual subjective inquiries into causality."

*Langendorf v. Skinnygirl Cocktails, LLC*, 306 F.R.D. 574, 583 (N.D. Ill. 2014) (quoting *Suchanek*, 764 F.3d at 759).

Nor do the minor differences in the bags defeat predominance. The bags at issue in each Class are uniform. Dkt. 95-18; Ex. 17 at ¶ 32(e). None have a disclaimer directing a consumer to consider all other packaging utilized by CPF, including any other diets purchased. Yet this is what CPF now claims is required, asking the Court to adopt a new insurmountable standard that would oblige courts to consider labeling across an entire product line (and perhaps even other manufacturers' products). But "how consumers actually behave—how they perceive advertising and how they make decisions . . . are matters of fact[.]" *Bell*, 982 F.3d at 481. And "shoppers [likely] make quick decisions that do not involve careful consideration of all information available to them." *Id.* CPF's proposal (that consumers retain and use all information *ever* available to them) would give manufacturers free reign to "cure" misleading packaging on one product by simply making further disclosures on another product. That is antithetical to consumer protection laws in this Circuit where "[c]onsumer-protection laws do not impose on average consumers an obligation to question the labels they see and to parse them as lawyers might for ambiguities…" *Bell*, 982 F.3d at 476. CPF cites to no authority supporting this "new standard," whereas the consumer survey Plaintiffs proffer shows reasonable consumers were misled:[2]

---

[2] CPF's reliance on *Oshana v. Coca-Cola Bottling Co.*, 225 F.R.D. 575 (N.D. Ill. 2005), is misplaced because *Oshana* sought to represent a class of consumers who purchased fountain

| EXPECTATIONS SURVEY OF REASONABLE CONSUMERS | Orijen Diets | Acana Diets |
|---|---|---|
| **From the "Biologically Appropriate" statements on the Dog Food, consumers would expect that:** | | |
| The dog food shown does not contain heavy metals. | 82.8% | 84.3% |
| The dog food shown does not contain BPA (Bisphenol A). | 71.3% | 73.2% |
| The dog food shown does not contain pentobarbital. | 69.9% | 68.2% |
| The dog food shown only contains fresh ingredients, unless specifically stated otherwise on the packaging. | 89% | 83.9% |
| **From the "Fresh" statements on the Dog Food, consumers would expect that:** | | |
| The dog food shown contains only fresh ingredients unless specifically stated otherwise on the packaging. | 84.2% | 84.7% |
| The dog food shown does not contain any expired ingredients. | 79.4% | 88.4% |
| The dog food shown does not contain any reground dog food (dog food previously manufactured by this manufacturer but that did not meet its specifications for sale). | 78.5% | 76.9% |
| **From the "Regional" statements on the Dog Food, consumers would expect that:** | | |
| The dog food shown does not contain imported ingredients. | 73.7% | 76.9% |
| Each ingredient in the dog food shown is from the region where the food is made unless specifically stated otherwise on the packaging. | 79.4% | 77.3% |
| **From the "Delivering nutrients naturally" statements on the Dog Food, consumers would expect that:** | | |
| The dog food shown does not contain heavy metals. | n/a | 84.7% |
| The dog food shown does not contain BPA (Bisphenol A). | n/a | 74.4% |

Dkt. 95-71; Ex. 70 at Figures 12-23, Dkt. 95-18; Ex. 17 at ¶¶ 32(k)-(l), 147.

CPF's argument resembles that of the plaintiff in *Stewart v. Riviana Foods Inc.*, who alleged the defendant misled her by selling "only 12 ounces of [] pasta in the same iconic boxes traditionally sized and priced to contain 16 ounces." 2017 WL 4045952, at *1 (S.D.N.Y. Sept. 11, 2017). The court found that a consumer who expects to receive a certain product characteristic "because she has purchased different [] products in similarly-sized boxes, is not reasonable." *Id.*

---

coke, and as the Court noted, "Coca–Cola does not advertise and sell fountain diet Coke—it sells syrup." *Id.* at 582.

at *10. The same is true of CPF's expectation that statements read across an entire product line are applied to the purchase at hand. That is unreasonable and not the standard.

CPF's last grasp suggests that minor changes to packaging as to each diet precludes a finding of predominance. But each Class packaging does not vary in a material way. All bags repeatedly promise "fresh" and "regional," (Ex. 73), and none disclose CPF's use of the challenged non-fresh and non-regional ingredients. The so-called "differences" cannot create individual issues:

- Changes of formula are reflected on the ingredient panel. *Contrast Bell,* 982 F.3d at 476 ("We therefore join our colleagues in at least three other circuits in holding that an accurate fine-print list of ingredients does not foreclose as a matter of law a claim that an ambiguous front label deceives reasonable consumers.");

- Neither the ingredient panel nor the "meat math" panel ever discloses the inclusion of heavy metals, BPA, non-regional, expired, and re-ground ingredients;

- Tiny print discloses "Half are FRESH or RAW . . . half are DRIED or OILS" *Contrast id.* ("Consumer-protection laws do not impose on average consumers an obligation to question the labels they see and to parse them as lawyers might for ambiguities, especially in the seconds usually spent picking a low-cost product.");

- No bag shows there are non-regional suppliers other than the limited disclosed non-regional suppliers. *Contrast id.*

Dkt. 114-1; Ex. A, 114-6; Ex. F. The bags have nearly identical "context," they all contain the same Packaging Claims, and not a single one discloses the Omissions. Ex. 73. This is like *In re Tropicana Orange Juice Mktg. & Sales Practices Litig.*, where predominance was met for the "pasteurized" claim found on every product. 2019 WL 2521958, at *10 (D.N.J. June 18, 2019). The misleading statements that did not meet predominance were *not* always present on the at least nine variations of packaging at issue. *Id.* at *9-10. CPF does not dispute that every single bag advertises Biologically Appropriate food with fresh and regional ingredients and each proposed Class here involves a single product with at most 3 labels and no material variations.

**2. All Packaging is Misleading As to the Content of Non-Fresh and Non-Regional Ingredients Used by CPF**

CPF skirts around its use of non-fresh and international ingredients because that uniform practice is dispositive of its lot-by-lot argument. CPF does not contest that most, if not all, of the fish used in the Acana Singles Wild Mackerel, Orijen Six Fish, Orijen Adult, and Orijen Regional Red diets is frozen. Dkt. 95-19; Ex. 18 at -6514 ("Our facility takes frozen blocks, grinds them in to a fresh slurry and ships the slurry in insulated food vats."). Nor does CPF dispute that it regularly manufactures its Dog Food with frozen red meat—such as Acana Regionals Grasslands, Acana Heritage Meats, Acana Lamb & Apple, Orijen Adult, and Orijen Regional Red. Dkt. 95 at 7. CPF ignores its own documents and testimony (including its corporate designee) that it regularly uses regrinds, and frozen and expired ingredients. Dkt. 95-8; Ex. 7, Dkt. 95-9; Ex. 8, Dkt. 95-19; Ex. 18 at -6514 (CPF actually purchases mostly *frozen* fish from a major supplier), Dkt. 95-22; Ex. 23 at 73:4-6 (regrinds are used more often than not); Ex. 74 at 104:22-105:5 (CPF's 30(b)(6) deponent testifying that expired ingredients are used in 1 in 20 lots.).[3]

Finally, CPF does not contest (1) it purchased a minute amount of its fresh chicken from the featured farmer on the 2016-2017 bags (Dkt. 95-29; Ex. 28); and (2) its featured farmer on the 2018 bags is actually from Tyson, Inc. Dkt. 95-30; Ex. 29, Dkt. 95-31; Ex. 30. These practices are why CPF questioned its ability to continue using "regional" on its bags. Dkt. 95-33; Ex. 32 (admission of what the reasonable consumer believes "regional" to mean.). This alone provides sufficient uniformity for class certification. *See In re: Kind LLC "Health and All Natural" Litig.*, 2021 WL 1132147, at *12 (S.D.N.Y. Mar. 24, 2021) ("If a product contains a single [non-conforming ingredient] the label is incorrect.").

---

[3] CPF improperly rests on a factual determination proper for the trier of fact—whether an ingredient used after the supplier's use-by is expired to a reasonable consumer. Dkt. 114 at 21.

### 3. Lot-by-Lot Variations Demonstrate the Packaging Claims Are Deceptive

It is well-established that "where an advertisement conveys more than one meaning, one of which is false, the advertiser is liable for the misleading variation[.]" *Bell*, 982 F.3d at 478. CPF's "lot-by-lot" argument is an admission of liability, not a rebuttal of predominance. There is no requirement that Plaintiffs prove literal falsehoods. *See Suchanek*, 764 F.3d at 761 ("It appears to assume that a package cannot be misleading if it does not contain literal falsehoods. But that is not the law."); *F.T.C. v. Bronson Partners, LLC*, 564 F. Supp. 2d 119, 130 (D. Conn. 2008) ("one true statement, in the presence of a mass of false and misleading statements, does not render an otherwise misleading advertisement non-misleading.").

CPF's admission that its food is *sometimes* Biologically Appropriate and *sometimes* made with fresh and regional ingredients does not defeat class certification: "The question whether the [CPF] packaging was likely to mislead a reasonable consumer is common to the claims of every class member. (Note that this is an objective question, not one that depends on each purchaser's subjective understanding of the package.)." *Suchanek*, 764 F.3d at 758. Whether CPF ever defined "regional" does not change this. *See Bell*, 982 F.3d at 476 ("Consumer-protection laws do not impose on average consumers an obligation to question the labels they see and to parse them as lawyers might for ambiguities[.]"). It is also ignores that "Plaintiffs are entitled to present evidence on how consumers actually understand these labels" and that is what Plaintiffs did here. *Bell*, 982 F.3d at 480. Plaintiffs' expert opinion shows that the Packaging Claims "convey the message to consumers that all of the products are [] made with fresh ingredients sourced from local, trusted suppliers[,]" and survey evidence demonstrates 77% of respondents did not expect imported ingredients and expected ingredients to be sourced from the region where the food was made unless otherwise disclosed. Dkt. 95-18; Ex. 17 at ¶ 202; Dkt. 95-71; Ex. 70 at Fig. 10.

Nothing on CPF's packaging discloses heavy metals, BPA, or non-fresh and non-regional ingredients (including regrinds). Common evidence shows the packaging is materially misleading even without "100%" guarantees. CPF itself admits it uses non-fresh, non-regional, non-biologically appropriate ingredients as a standard practice:

- "The ratio of fresh to raw chicken [and fish] ingredients [and fruits and vegetables] varied, depending on a number of factors, including the time of year and supply." Dkt. 114-6; Ex. F at ¶¶ 28, 30, 32, 33, 35.[4]

- "Ingredients that are not highlighted by icons, Meat Math, or specific language, but instead are only listed on the ingredient panel, are often not fresh or regional ingredients." *Id*. at ¶ 25.

- The introduction of regrinds is standard practice, and "[p]roduction runs of a number of Champion's diets sometimes include regrinds." *Id*. at ¶ 37. Regrinds sometimes "exceed[s] 5% of the bulk dry ingredients of a diet." *Id*. at ¶ 39. These regrinds are "out of spec" and sometimes contain "pathogens or bacteria, such as salmonella." *Id*. at ¶ 38.

- CPF employs the standard practice of "sight and smell" tests to determine if ingredients are past their shelf life. *Id*. at ¶¶ 43-46.

- "[S]ometimes its regional suppliers cannot meet Champion's demand, or the highest quality product must be sourced from a location that is geographically distant from Champion's kitchens." *Id*. at ¶ 53.

These admissions all involve common fact questions regarding the deceptiveness of the Packaging Claims and Omissions since none of these practices are ever disclosed. These "seasonal," "sometimes," and "standard" practices prove how the Packaging Claims and Omissions are misleading: A consumer cannot read the Dog Food packaging and determine whether it is misleading. Instead, a consumer must know which of CPF's kitchens made the Dog Food; which ingredients were seasonal when CPF manufactured that particular lot; and whether there were regrinds (contaminated or not) used as a filler on that particular day. Yet, CPF's packaging repeatedly promises dog food that is "Biologically Appropriate," and made with fresh,

---

[4] CPF's former CEO stated that less than half of the meat it received in 2013 arrives fresh, "counter to our marketing message." Ex. 75.

regional, and natural ingredients. Ex. 73. And, both the consumer survey and expert opinion show consumers were misled. Dkt. 95-71; Ex. 70 at Figures 12-23, Dkt. 95-18; Ex. 17 at ¶¶ 32(i)-(l), 64, 147. This is common liability evidence that was completely ignored by CPF. CPF's claim that other evidence it does address is not class-wide proof because it is only occasional and anecdotal, and even if that were true (it is not), it is incorrect. *See Coates v. Johnson & Johnson*, 756 F. 2d 524, 533 (7th Cir. 1985) ("Neither statistical nor anecdotal evidence is automatically entitled to reverence to the exclusion of the other."). Further, whether these practices are standard or not, "the changes within each formula type are relatively minor, occurred over time in an essentially uniform way, and can be addressed class-wide." *Zeiger,* 2021 WL 756109, at *29.

Since all the Dog Food contains heavy metals, CPF pivots, arguing the *levels* in each bag must be analyzed. The Court already found that the *presence* of heavy metals (a common issue) underlies Plaintiffs' claims:

> The Court agrees that the success of Plaintiffs' claims does not depend on whether the dog food is safe or not, so it is irrelevant that Plaintiffs did not allege the levels at which heavy metals would render dog food unsafe for consumption. Plaintiffs have stated a plausible claim that they relied on Defendants' statements marketing their dog food as natural and high quality, but would not have purchased the dog food if they had known it contained heavy metals. That theory does not require Plaintiffs to plead that the dog food contained enough heavy metals to be unsafe or dangerous.

Dkt. 47 at 8-9 (citing *Leppert v. Champion Petfoods USA Inc.,* 2019 WL 216616, at *6 (N.D. Ill. Jan. 16, 2019) ("…It is entirely plausible that a consumer purchasing what she believes to be healthy, natural and high-quality cat food would not purchase that cat food if she knew it contained any amount of heavy metals and/or BPA.").) And this is exactly what the evidence supports here. Dkt. 95-71; Ex. 70 at Figures 12-23 and Table 15, Dkt. 95-18; Ex. 17 at ¶¶ 32(k)-(l), 147.

Even if this argument was relevant, "[c]onclusions about safety of heavy metals cannot be drawn from incomplete data," and "[s]ingle tests done on small samples of dog food do not tell the

entire story of bioaccumulation." Ex. 76 at 25-26. "All heavy metals…have their toxic effects on living organism," and "[t]he bioaccumulation of toxic metals can occur in the body and food chain." *Id*. at 14. "The issue is not that any single dose is harmful, it is that ingesting these substances [] bioaccumulate to unsafe levels." *Zeiger*, 2021 WL 756109, at *6. Finally, CPF's BPA lot-by-lot argument directly conflicts with its position that BPA is everywhere and its own expert opinion supporting this argument: "[b]ecause of the ubiquitous presence of BPA in our environment, it is nearly certain that BPA is present in most food products." Ex. 77 at 29.

### B. Class Members' Damages Can be Calculated Classwide

CPF argues Boedeker imputes "a negative value" on the Dog Food and "overstates the damages by calculating both misrepresentations and omissions." Dkt. 114 at 28. But Boedeker based his model on the price premium for the Dog Food and isolated each misrepresentation and omission. The model assumes a product has a minimum value, and misrepresentations or omissions can reduce the value *to* that floor (not below). Dkt. 95-71; Ex. 70 at ¶ 170. Boedeker calculated these damages for both misrepresentations and omissions, but he did not propose simply adding these calculations together. Ex. 78 at 102:12-18. The calculated losses are in line with the price difference between the Dog Food and non-premium brands (which do not make the claims CPF makes). Dkt. 95-71; Ex. 70 at ¶ 187.[5] Such a "'price premium' theory based on a conjoint analysis has been accepted by several courts." *In re Fluidmaster, Inc. Water Connector Components Prods. Liab. Litig.* ("*Fluidmaster*"), 2017 WL 1196990, at *57 (N.D. Ill. Mar. 31, 2017) (citing *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 953 (C.D. Cal. 2015);[6] *In re IKO*

---

[5] Boedeker also testified that results could only be added if the misrepresentation and omission results are independent, which he had not yet determined. Ex. 78 at 101:20-102:18.

[6] Although CPF cites *Fluidmaster* as an analog for the mismatch between a damages model and liability theory, it is not consistent with this case. In *Fluidmaster*, Plaintiffs' expert never stated why the attributes were chosen and defendant's expert relied on a study that showed other attributes were more important to consumers than price. 2017 WL 1196990, at *31. The

*Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 603 (7th Cir. 2014) (a theory of damages reflecting the difference in market price between a product represented to have an attribute and a product without that attribute matched theory of liability where attribute was misrepresented by defendant); *Flynn v. FCA US LLC*, 327 F.R.D. 206, 225 (S.D. Ill. 2018) (conjoint analysis "sufficiently tied to Plaintiffs' theory of liability").

CPF also argues that Boedeker's model ignores the supply side in the but-for-world. Dkt. 114 at 28-29. But Boedeker accounted for supply-side factors by incorporating actual market prices and market volume in the damages calculations.[7] Dkt. 95-71; Ex. 70 at ¶¶ 50–52, 118–19. He properly assumed the supplied volume in the but-for-world is the same as the actual world. *Id.* at ¶¶ 36–40.[8] "In a classic mislabeling case, [] that makes sense." *In re Gen. Motors LLC Ignition Switch Litig.*, 407 F. Supp. 3d 212, 238–239 (S.D.N.Y. 2019); *see id.* ( "[a]ccounting for supply-side factors is not so simple" when "dangerous [vehicle] defects" are at issue); *Mannacio v. LG Elecs. U.S.A., Inc.*, 2020 WL 4676285, at *4 (D. Minn. Aug 12, 2020) ("[C]onjoint analyses 'adequately account for supply-side factors' when '(1) the prices used in the surveys underlying the analyses reflect the actual market prices that prevailed during the class period; and (2) the quantities used (or assumed) in the statistical calculations reflect the actual quantities of products sold during the class period.'"). Considering the supply fixed in a mislabeling case, as Boedeker did, has been widely accepted. *See Broomfield v. Craft Brew All., Inc.,* 2018 WL 4952519, at *18

---

"combination" of those two issues with the fact that the proposed survey participants were non-plumber consumers while the majority of purchasers were plumbing professionals, caused the court to reject the model. *Id.* at *94. None of those factors (never mind a combination of the three) are present here.
[7] Boedeker converted retail revenue data to determine retail sales volume, (Dkt. 95-71; Ex. 70 ¶¶ 20-22), because CPF did not produce actual unit sales numbers.
[8] CPF's expert also testified that data necessary to perform the kind of supply-side analysis CPF seeks may not even be available. Ex. 78 at 80:14–81:7.

(N.D. Cal. Sept. 25, 2018) (collecting cases). And this critique goes to weight, not admissibility. *Fluidmaster*, 2017 WL 1196990 *30. Even if Boedeker had not considered any supply side factors, such an omission is not necessarily fatal. *Suchanek v. Sturm Foods, Inc.*, 2017 WL 3704206, at *20 (S.D. Ill. Aug. 28, 2017).

### C. The Requirements of Rule 23(b)(2) are Satisfied.

Certification of a Rule 23(b)(2) injunctive class is appropriate because injunctive relief is essential prospective protection for consumers. As another district court in a similar case determined in certifying a 23(b)(2) class, "[t]here is no reason to think that injunctive relief against future harm is less important than monetary relief for past harm. To hold otherwise would bar an injunctive relief class merely because damages are also available." *Zeiger*, 2021 WL 756109, at *31. This case does not implicate mini trials on individual damages or injunctions, and liability will not be determined individually – the Packaging Claims and Omissions appear on *all* packaging and is misleading as to the diet at issue in each Class. CPF's actions are equally applicable to the entire class, and injunctions would prohibit the misrepresentations as to all class members. Certification is appropriate because the proposed Rule 23(b)(2) class seeks the same injunction and declaratory relief for all class members. *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 483 (N.D. Ill. 2009). *See also Lacy v. Dart*, 2015 WL 1995576, at *6 (N.D. Ill. Apr. 30, 2015) ("The injunctive relief plaintiffs seek as a class would resolve their alleged injuries at one time, regardless of the level of accommodation individual class members require.").

### D. Rule 23(c)(4) Certification is Appropriate.

CPF offers little analysis in opposing issue certification, relying on the false premise that this case involves overly complex individual issues. But Rule 23 *invites* "carving at the joints of the parties' dispute" and "resolv[ing] issues in one fell swoop while leaving the remaining, claimant-specific issues to individual follow-on proceedings." *Mejdrech v. Met-Coil Sys. Corp.*,

319 F.3d 910, 911 (7th Cir. 2003). This is true even if issues like "damages or causation [] require individualized assessments." *Pella Corp. v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010); *see also Dawson v. Great Lakes Educ. Loan Servs, Inc.*, 327 F.R.D. 637 at 649 (W.D. Wisc. 2018) ("When there are individual issues about causation and damages, a court may limit certification to the issue of liability."); *see also McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 672 F. 3d 482, 491 (7th Cir. 2012) (invoking Rule 23(c)(4) to certify "a pair of issues that can most efficiently be determined on a class-wide basis"). In addition to the discretion afforded by Rule 23(c)(4), this Circuit has observed that "Rule 23(c)(1)(B) specifically recognizes the possibility of certifying not just 'class claims,' but also class 'issues.'" *Arreola v. Godinez*, 546 F.3d 788, 800 (7th Cir. 2008).

CPF cannot suggest that here "litigating [each issue] anew in more than a thousand separate lawsuits," "would be a more efficient procedure" than determining them in "[a] single hearing." *In re Allstate Ins. Co.*, 400 F.3d 505, 508 (7th Cir. 2005). Indeed, "the damages of individual class members, or homogeneous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed." *Butler*, 727 F.3d at 800. There being no need for expert or significant fact discovery, a Special Master could decide damages for individual claimants in a single hearing. The Court should certify liability, or any of the core liability issues common to the Classes pursuant to Rule 23(c)(4).

## III. CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' motion for class certification.

Dated: May 19, 2021                    LOCKRIDGE GRINDAL NAUEN P.L.L.P.

By: /s/ Rebecca A. Peterson
ROBERT K. SHELQUIST, Pro Hac Vice
REBECCA A. PETERSON, Pro Hac Vice
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
Telephone: (612) 339-6900
Facsimile: (612) 339-0981
E-mail: rapeterson@locklaw.com
       rkshelquist@locklaw.com

WEXLER WALLACE LLP
KENNETH A. WEXLER
KARA A. ELGERSMA
MICHELLE PERKOVIC
55 West Monroe Street, Suite 3300
Chicago, IL 60603
Tel: (312) 346-2222
Fax: (312) 346-0022
Email: kaw@wexlerwallace.com
       kae@wexlerwallace.com
       mp@wexlerwallace.com

WEXLER WALLACE LLP
MARK T. TAMBLYN, Pro Hac Vice
333 University Avenue, Suite 200
Sacramento, CA 95825
Tel: (916) 565-7692
Email: mjt@wexlerwallace.com

ROBBINS LLP
KEVIN A. SEELY (199982)
5040 Shoreham Place
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: kseely@robbinsllp.com

GUSTAFSON GLUEK, PLLC
DANIEL E. GUSTAFSON, Pro Hac Vice
Canadian Pacific Plaza
120 South 6th Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
E-mail: dgustafson@gustafsongluek.com

CUNEO GILBERT & LADUCA, LLP
CHARLES J. LADUCA
KATHERINE VAN DYCK
4725 Wisconsin Ave NW, Suite 200
Washington, DC 20016
Telephone: 202-789-3960
Facsimile: 202-789-1813
E-mail: kvandyck@cuneolaw.com
          charles@cuneolaw.com

LITE DEPALMA GREENBERG & AFANADOR, LLC
JOSEPH J. DEPALMA
SUSANA CRUZ HODGE
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
E-mail: jdepalma@litedepalma.com
          scruzhodge@litedepalma.com

**Attorneys for Plaintiffs**